**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMIL HOHMANN and RASHAAN ELAM,** | : | **CIVIL ACTION NO. 1:15-CV-1240** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JASON EUGENE HOBBLE and OFFICERS SNYDER AND STURM,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

*Pro se* plaintiffs Emil Hohmann ("Hohmann") and Rashaan Elam ("Elam") commenced this civil action with the filing of a complaint in the Court of Common Pleas for Cumberland County, Pennsylvania.  Plaintiffs assert sundry constitutional claims against defendants Jason Eugene Hobble ("Hobble"), a private citizen, and Officers Snyder and Sturm ("the officers") of the Carlisle Borough Police.  The officers move to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court will grant the officers' unopposed motion and dismiss plaintiffs' complaint.

I.    **Factual Background and Procedural History**

Minor child L.H. is the son of plaintiff Elam and defendant Hobble.  (See Doc. 1-1 at 1).  On June 2, 2015, L.H. visited a barber shop in Carlisle, Pennsylvania.  (Id.) While there, Hobble noticed "scratches on the face of the child and inquired as to how he got them."  (Id. at 1-2).  L.H. told Hobble that the wounds were self-inflicted and indicated that he did not want to talk about them.  (Id. at 2).  Following a "long and heated" telephone and text message conversation with Elam, Hobble contacted

the Carlisle Borough Police to report Hohmann and Elam for suspected child abuse

of L.H.  (Id.)  The defendant officers visited plaintiffs' shared home to investigate

the allegation.  (Id.)

Plaintiffs allege that the officers arrived at approximately 8:35 p.m. on June

2, 2015 and "demanded access" to the home.  (Id.)  Plaintiffs refused this demand

because the officers did not present a search warrant.  (Id.)  At the officers' request,

plaintiffs "allowed the child to come to the door and be seen," at which point the

officers "ma[de] a move to step into" the home.  (Id.)  The officers stated that they

"did not need a warrant," but ultimately did not enter plaintiffs' home.  (See id.)

Plaintiffs rebuffed the officers' request to provide identification, at which point the

officers left.  (Id.)  According to the complaint, Officer Sturm stated: "I will just let

Child Protective Services know how uncooperative you have been.  They will just

come and take the child from your house.  They don't need a warrant."  (Id.)  At no

point during this encounter did the officers actually enter plaintiffs' home.  (See id.)

On June 4, 2015, two days after the above-described incident, plaintiffs

commenced this action by filing a six-count complaint in the Court of Common

Pleas for Cumberland County.  In Count I, plaintiffs assert a Fourth Amendment

claim against Hobble for filing "a false report of abuse against the plaintiffs."  (Id. at

2-3).  In Counts II through VI, plaintiffs assert various Fourth and Fifth Amendment

claims against the officers.  (Id. at 3).  Plaintiffs request damages as follows: $400 a

month in child support against Hobble, and an order barring his future visitation

with L.H.; $5,000 for each of Counts II, III, and IV; and $10,000 for each of Counts V

and VI.  (Id. at 4).  The officers timely removed the action to this court.  (Doc. 1).

On July 1, 2015, the officers filed the instant motion and supporting brief.
(Docs. 6-7).  Shortly thereafter, Hohmann filed a "petition for writ of mandamus,"
purporting to represent the Superior Court of Pennsylvania and "ordering" remand
of this matter.  (Doc. 8).  The court denied his request.  (Doc. 10).  Plaintiffs failed to
file a timely response to the officers' motion, and the court directed them to do so
on or before August 7, 2015.  (Doc. 9).  The court cautioned plaintiffs that failure to
comply with this directive would result in the court deeming the officers' motion to
be unopposed.  (Id.)  Despite this admonition, plaintiffs have not filed a response.
Consequently, the court will rule on the officers' unopposed motion to dismiss.  See
LOCAL RULE OF COURT 7.6; see also Williams v. Lebanon Farms Disposal, Inc., No.
09-1704, 2010 WL 3703808, at *1 (M.D. Pa. Aug. 26, 2010).

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the
dismissal of complaints that fail to state a claim upon which relief may be granted.
FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the
court must "accept all factual allegations as true, construe the complaint in the light
most favorable to the plaintiff, and determine whether, under any reasonable
reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of
Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the
defendant fair notice of what the . . . claim is and the grounds upon which it rests."
Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' "  Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires."  FED. R. CIV. P. 15(a)(2).

## III.   Discussion

Hohmann and Elam cite various federal and state constitutional provisions in support of their civil rights claims, but their theory of liability is less than pellucid.

(See Doc. 1-1 at 1-3).  Nonetheless, the court is cognizant of its obligation to liberally

construe *pro se* pleadings.  See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009)

(citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Gibbs v. Roman, 116 F.3d 83, 86

n.6 (3d Cir. 1997)).  So construed, the gravamen of plaintiffs' complaint appears to

be that the officers violated their constitutional right to be free from warrantless

searches and seizures.[1]  (See Doc. 1-1 at 1-3).  Hence, the court will analyze

Hohmann and Elam's *pro se* pleading through the prism of the Fourth Amendment

and 42 U.S.C. § 1983.

### A.      Federal Constitutional Claims

Section 1983 of Title 42 of the United States Code provides a cause of action

to redress violations of federal law by state officials.  See 42 U.S.C. § 1983.  Section

1983 is not a source of substantive rights, but merely a means of vindicating those

rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273,

284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim

under Section 1983, a plaintiff must show deprivation of a "right secured by the

Constitution and the laws of the United States . . . by a person acting under color of

state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d

1137, 1141 (3d Cir. 1995)).  The officers do not contest that they were "acting under

color of state law" for purposes of the instant motion.  Instead, the officers dispute

whether they caused a deprivation of plaintiffs' Fourth Amendment rights.

---

[1] Plaintiffs also cite to the Fifth Amendment throughout their pleading but
fail to articulate a cognizable Fifth Amendment claim.  (See Doc. 1-1 at 2-3).

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Subject to narrow exceptions, a search or seizure without a warrant is unreasonable. See Kyllo v. United States, 533 U.S. 27, 31 (2001); United States v. Whitted, 541 F.3d 480, 484 (3d Cir. 2008). Importantly, an officer does not violate the Fourth Amendment by approaching a home without a warrant and knocking on the front door, "precisely because that is 'no more than any private citizen might do.'" Florida v. Jardines, __ U.S. __, 133 S. Ct. 1409, 1415-16 (2013) (quoting Kentucky v. King, 563 U.S. 452, 469-70 ((2011)). The Constitution allows an officer not only to knock, but also to question a person at the threshold of their home. See Jardines, 133 S. Ct. at 1415-16. This procedure, referred to as the "knock and talk," is a common law enforcement investigative strategy; it does not offend the Fourth Amendment because it authorizes no more intrusion than that permitted of "the Nation's Girl Scouts and trick-or-treaters." Id.; Carman v. Carroll, 749 F.3d 192, 197-99 (3d Cir.), rev'd on other grounds by, __ U.S. __, 135 S. Ct. 348 (per curiam).

The officers *sub judice* acted consistent with these principles. At the outset, the complaint fails to establish a prerequisite element of a Fourth Amendment search claim—that is, the officers never actually entered plaintiffs' home. (Cf. Doc. 1-1 at 1-3). An unlawful search claim generally does not lie against officers who do not enter the residence. See, e.g., Merring v. City of Carbondale, 558 F. Supp. 2d 540, 550-51 (M.D. Pa. 2008); Joyce v. City of Sea Isle City, No. 04-5345, 2008 WL

6

906266, at *15 (D.N.J. Mar. 31, 2008).[2]  Here, the defendant officers' limited

discussion with plaintiffs outside of their home amounts to nothing more than a

permissible "knock and talk," and plaintiffs do not allege or imply that the officers

exceeded the bounds of their authority or remained after being asked to leave.  See

Jardines, 133 S. Ct. at 1114-15; Carman, 749 F.3d at 197-99; see also United States v.

Lubrin, No. 2014-56, 2015 WL 361796, at *4-7 (D.V.I. Jan. 28, 2015).  For all of these

reasons, plaintiffs fail to state a Fourth Amendment claim.

### B.     State Constitutional Claims

Plaintiffs also cite, without elaboration, to various provisions of the

Pennsylvania Constitution in support of their request for compensatory damages.

(See Doc. 1-1 at 1-3).  However, no private cause of action for damages exists under

the Pennsylvania Constitution.  See  Pocono Mountain Charter Sch. v. Pocono

Mountain Sch. Dist., 442 F. App'x 681, 687-88 (3d Cir. 2011) (citing Jones v. City of

Phila., 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006)); Banks v. City of York, No. 1:14-

CV-1191, 2015 WL 4092342, at *10 (M.D. Pa. 2015); Winkler v. Pa. Dep't of Agric., 994

F. Supp. 2d 668, 673 (E.D. Pa. 2014); One Three Five, Inc. v. City of Pittsburgh, 951

F. Supp. 2d 788, 809-10 (W.D. Pa. 2013).  The court will dismiss plaintiffs' claims for

damages under the Pennsylvania Constitution.

---

[2] Nor does an officer's request for identification implicate Fourth
Amendment concerns; the Supreme Court time and again has held that such
requests do not violate the Constitution.  See Hiibel v. Sixth Judicial Dist. Court of
Nev., 542 U.S. 177, 186 (2004) (collecting cases).

### C.    Claim against Hobble

In light of the foregoing analysis, the court deems it appropriate to address plaintiffs' only remaining claim against *pro se* defendant Hobble.  In the complaint, plaintiffs assert that Hobble's allegedly false report of child abuse was the impetus for the officers' violation of plaintiffs' constitutional rights.  (See Doc. 1-1 at 2-3).  Hobble, however, is not a state actor, and Section 1983 authorizes constitutional claims only against persons "acting under color of state law."  42 U.S.C. § 1983.  The court cannot conceive of any circumstance under which Hobble, as a private citizen and concerned father, might be deemed a state actor.  Accordingly, the court will dismiss the claim against Hobble *sua sponte* as it fails to state a Section 1983 claim.  See, e.g., Woodall v. Geist, No. 09-4975, 2010 WL 1838433, at *2-4 (D.N.J. May 5, 2010); Buchanan v. Gay, 491 F. Supp. 2d 483, 495 (D. Del. 2007).

### D.    Leave to Amend

Plaintiffs' complaint is deeply flawed.  Nonetheless, the Third Circuit Court of Appeals requires courts to grant leave to amend when a curative amendment is conceivable.  See Fletcher-Harlee Corp., 482 F.3d at 251; Grayson, 293 F.3d at 108.  However remote the possibility, the court can envision certain facts which would resurrect plaintiffs' claims against the officers and, in the exercise of caution, the court is compelled to grant leave to amend Counts II through VI.  Plaintiffs' claim against Hobble, however, is incurable, and it will be dismissed with prejudice.

To the extent that plaintiffs elect to amend their pleading, the court must address one remaining flaw therein.  Local Rule of Court 8.1 prohibits claims for sum certain damages except as necessary to establish minimum jurisdictional

amounts in controversy. See LOCAL RULE OF COURT 8.1. Courts in this district routinely strike specific requests for unliquidated damages pursuant to this rule. See, e.g., Altenbach v. Ianuzzi, No. 3:14-CV-1932, 2015 WL 5688476, at *5 (M.D. Pa. Sept. 25, 2015); Chen v. Holt, No. 3:12-CV-1817, 2012 WL 360032, at *2 (M.D. Pa. Jan. 29, 2013); Ortiz v. Prison Bd. Members, No. 3:CV-08-2126, 2011 WL 776195, at *2-3 (M.D. Pa. Feb. 28, 2011). Plaintiffs' request for damages of $5,000 and $10,000, per count and per officer, contravenes this prohibition. Plaintiffs are admonished that any amended pleading filed pursuant to this memorandum shall comply with the Local Rules of Court.

## IV.  Conclusion

The court will grant the defendant officers' motion (Doc. 6) to dismiss plaintiffs' complaint and will further dismiss, with prejudice, the claim against defendant Hobble. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       January 19, 2016